Carly M. Roman
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
croman@strausborrelli.com

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOSEPH CORBRAY** and **STEPHANIE JONES**, on behalf of themselves and all others similarly situated, | Case No. |
| Plaintiff, | <u>**CLASS ACTION COMPLAINT**</u> |
| v. | **DEMAND FOR JURY TRIAL** |
| **TRIZETTO PROVIDER SOLUTIONS LLC** and **ONE COMMUNITY HEALTH,** | |
| Defendants. | |

Joseph Corbray and Stephanie Jones ("Plaintiffs"), through their attorneys, individually and on behalf of all others similarly situated, bring this Class Action Complaint against Defendants One Community Health and TriZetto Provider Solutions LLC ("TriZetto"), and their present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiffs allege the following on information and belief—except as to their own actions, counsel's investigations, and facts of public record.

### NATURE OF ACTION

1.      This class action arises from Defendants' failure to protect highly sensitive data.

2.      Defendant TriZetto is a provider of revenue management services to physicians, hospitals, and health systems, based in Earth City, Missouri.[1]

3.      Defendant One Community Health is a nonprofit healthcare system that provides comprehensive medical care based in Sacramento, California.[2] On information and belief, Defendant One Community Health is an enterprise client of TriZetto.[3]

4.      As such, TriZetto stores a litany of highly sensitive personal identifiable information ("PII") and protected health information ("PHI")—together "PII/PHI"—about its current and former employees and/or consumers of Defendant One Community Health.

5.      But such PII/PHI was inadequately protected and thus exposed to cybercriminals in a data breach (the "Data Breach").

6.      It is unknown for precisely how long the cybercriminals had access to Defendants' network before the breach was discovered. In other words, Defendants had no effective means to prevent, detect, stop, or mitigate breaches of their systems—thereby allowing cybercriminals unrestricted access to their consumers' PII/PHI.

7.      On information and belief, cybercriminals were able to breach Defendants' systems because Defendants failed to adequately train their employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's PII/PHI. In short, Defendants' failures placed the Class's PII/PHI in a vulnerable position—rendering them easy targets for cybercriminals.

---

[1] *The TriZetto Provider Solutions Story*, TRIZETTO PROVIDER SOLUTIONS, https://www.trizettoprovider.com/who-we-are/our-story (last visited Dec. 16, 2025); *TriZetto Provider Solutions Notifies Healthcare Provider Clients About Data Breach*, THE HIPAA JOURNAL, https://www.hipaajournal.com/trizetto-provider-solutions-data-breach/ (last visited Dec. 16, 2025).

[2] *Our Services*, ONE COMMUNITY HEALTH, https://onecommunityhealth.com/services/ (last visited Jan. 5, 2026).

[3] *Notice of Data Security Incident*, ONE COMMUNITY HEALTH, https://onecommunityhealth.com/notice-of-data-security-incident/#:~:text=One%20Community%20Health%20uses%20TriZetto,of%20its%20healthcare%20provider%20customers (last visited Jan. 5, 2026).

8.    Plaintiffs are Data Breach victims. They bring this class action on behalf of themselves, and all others harmed by Defendants' misconduct.

9.    The exposure of one's PII/PHI to cybercriminals is a bell that cannot be unrung. Before this Data Breach, their consumers' private information was exactly that—private. Not anymore. Now, their private information is forever exposed and unsecure.

**PARTIES**

10.   Plaintiff Joseph Corbray is a natural person and a citizen of Sacramento, California. He is domiciled in California, where he intends to remain.

11.   Plaintiff Stephanie Jones is a natural person and a citizen of Sacramento, California. She is domiciled in California, where she intends to remain.

12.   Defendant, TriZetto Provider Solutions LLC, is a foreign limited liability company incorporated in Delaware and with its principal place of business at 221 Bolivar St. Jefferson City, Missouri, 65101.

13.   Defendant One Community Health System is a nonprofit healthcare system incorporated in Oregon with its principal place of business at 1500 21st Street, Sacramento, California, 95811.

**JURISDICTION AND VENUE**

14.   This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. At least one Plaintiff is a citizen of a different state than at least one Defendant.[4] And there are over 100 putative Class Members.

15.   This Court has personal jurisdiction over Defendants because Defendant One Community Health conducts business in the State of California through its healthcare facilities located within the State, and Defendant TriZetto conducts business in California by providing

---

[4] Under the Class Action Fairness Act, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10); Thus, as an LLC, Defendant TriZetto is a citizen of Delaware (state of formation) and Missouri (principal place of business).

services to One Community Health. Defendants have purposefully availed themselves of the privilege of conducting activities in California, and Plaintiffs' claims arise out of or relate to those activities.

16. Venue is proper in this Court because Defendant One Community Health's principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District. Moreover, Defendant TriZetto has sufficient contacts with California through its business operations and contacts with One Community Health—including whereby Defendant TriZetto sent and received the PII/PHI of Plaintiffs and Class Members to One Community Health which has its principal office in this District.

## BACKGROUND

### Defendants Collected and Stored the PII/PHI of Plaintiffs and the Class

17. Defendant TriZetto is a provider of revenue management services to physicians, hospitals, and health systems, based in Earth City, Missouri.[5]

18. Defendant One Community Health is a nonprofit healthcare system that provides comprehensive medical care based in Sacramento, California.[6] On information and belief, Defendant One Community Health is an enterprise client of TriZetto.[7]

19. As part of its business, Defendant One Community Health collects and maintains the PII/PHI of thousands of its current and former employees and/or patients.

---

[5] *The TriZetto Provider Solutions Story*, THE TRIZETTO PROVIDER SOLUTIONS, https://www.trizettoprovider.com/who-we-are/our-story (last visited Dec. 16, 2025); *TriZetto Provider Solutions Notifies Healthcare Provider Clients About Data Breach*, THE HIPAA JOURNAL, https://www.hipaajournal.com/trizetto-provider-solutions-data-breach/ (last visited Dec. 16, 2025).
[6] *Our Services*, ONE COMMUNITY HEALTH, https://onecommunityhealth.com/services/ (last visited Jan. 5, 2026).
[7] *Notice of Data Security Incident*, ONE COMMUNITY HEALTH, https://onecommunityhealth.com/notice-of-data-security-incident/#:~:text=One%20Community%20Health%20uses%20TriZetto,of%20its%20healthcare%20provider%20customers (last visited Jan. 5, 2026).

20.    As part of its business, Defendant One Community Health then sends such PII/PHI to Defendant TriZetto.

21.    As part of its business, Defendant TriZetto collects and maintains the PII/PHI of the current and former employees and/or patients of Defendant One Community Health.

22.    In collecting and maintaining the PII/PHI, Defendants agreed they would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiffs and Class Members themselves took reasonable steps to secure their PII/PHI.

23.    Under state and federal law, businesses like Defendants' have duties to protect employee and consumers' PII/PHI and to notify them about breaches.

24.    Defendant TriZetto recognizes these duties, advertising in its "Privacy Notice" that:

    a.    "Cognizant [TriZetto] implements appropriate security measures designed to prevent unlawful or unauthorized processing of personal information and accidental loss of or damage to personal information."[8]

    b.    "The data collected via our Sites is stored in a secure server with our ISP who will take periodic backups of such data."[9]

    c.    "Your personal information will be retained only for so long as reasonably necessary for the purposes set out in this Privacy Notice in accordance with applicable laws, including for the purposes of satisfying any legal, regulatory, accounting or reporting requirements."[10]

25.    Defendant One Community Health recognizes these duties, advertising in its "Notice of Privacy Practices" that:

---

[8] *Cognizant website Privacy Notice*, COGNIZANT, https://www.cognizant.com/us/en/privacy-notice (last visited Dec. 16, 2025).
[9] *Id.*
[10] *Id.*

a.  "We understand that information about you and your health is personal. We are committed to protecting the confidentiality of your medical information."[11]

b.  "Information might also be disclosed to a third party for the purposes of encrypting, encoding, or otherwise anonymizing the data. We have a written contract with each of these business associates requiring them to protect the confidentiality of your protected health information."[12]

c.  "All research projects conducted by UC Davis are reviewed and approved through a special review process to protect patient safety, welfare, and confidentiality."[13]

## Defendants' Data Breach

26.  On October 2, 2025, Defendant TriZetto was hacked in the Data Breach—which comprised the data of its enterprise consumers.[14]

27.  Worryingly, Defendant TriZetto already admitted that:

a.  "Suspicious activity was identified within a web portal used by some of its healthcare provider customers to access TriZetto systems,"[15]

b.  "While the cybersecurity incident was only recently detected, the unauthorized access has been ongoing for a considerable period of time."[16]

c.  "The forensic investigation determined that an unauthorized third party first started accessing historical eligibility transaction reports within the TriZetto

---

[11] *Notice of Privacy Practices*, ONE COMMUNITY HEALTH, https://onecommunityhealth.com/notice-of-privacy-practices/ (last visited Jan. 5, 2026).

[12] *Id*.

[13] *Id*.

[14] *TriZetto Provider Solutions Notifies Healthcare Provider Clients About Data Breach*, THE HIPAA JOURNAL, https://www.hipaajournal.com/trizetto-provider-solutions-data-breach/ (last visited Dec. 16, 2025).

[15] *Id*.

[16] *Id*.

6

system in November 2024, almost a year before the unauthorized access was detected."[17]

    d.    "The reports within its storage system contained the protected health information of patients of certain healthcare provider clients."[18]

28.    Because of Defendants' Data Breach, at least the following types of PII/PHI were compromised:

    a.    Name of individual;

    b.    Address;

    c.    Date of birth;

    d.    Social Security Number Information;

    e.    Medical Information; and

    f.    Health Insurance Information

29.    Currently, the precise number of persons injured is unclear. But upon information and belief, the size of the putative Class can be ascertained from information in Defendants' custody and control. And upon information and belief, the putative Class includes thousands of members—as it includes its employees/consumers.

30.    And yet, Defendant TriZetto waited until December 9, 2025, before it began notifying the Class—a full sixty-eight days after the Data Breach was discovered.[19]

31.    Thus, Defendants kept the Class in the dark—thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

32.    Notably, California Civ. Code § 1798.82(a)(2)(A) mandates that notice "shall be made within 30 calendar days of discovery or notification of the data breach."

---

[17] *Id.*

[18] *Id.*

[19] *Data Breach Notice*, SOUTH CENTRAL PUBLIC HEALTH DISTRICT, https://www.classaction.org/media/trizetto-data-breach-attorney-letter-2025.pdf (last visited Dec. 16, 2025); *TriZetto Provider Solutions Notifies Healthcare Provider Clients About Data Breach*, THE HIPAA JOURNAL, https://www.hipaajournal.com/trizetto-provider-solutions-data-breach/ (last visited Dec. 16, 2025).

1

2

3

33.     And when Defendant TriZetto did notify Plaintiffs and the Class of the Data Breach, Defendant TriZetto acknowledged that the Data Breach created a present, continuing, and significant risk of suffering identity theft, warning Plaintiffs and the Class:

4

5

a.     "… beginning in November 2024, an unauthorized actor accessed certain historical eligibility transaction reports stored within their system."[20]

6

7

b.     "These reports included protected health information (PHI) for individuals associated with our organization."[21]

8

9

10

11

34.     Defendants failed their duties when their inadequate security practices caused the Data Breach. In other words, Defendants' negligence is evidenced by their failure to prevent the Data Breach and stop cybercriminals from accessing the PII/PHI. And thus, Defendants caused widespread injury and monetary damages.

12

13

14

35.     Since the Data Breach, Defendant TriZetto claims that it has offered to handle required breach notifications and regulatory reporting on behalf of affected clients and to cover the costs of credit monitoring and identity theft protection services.[22]

15

16

36.     But such simple declarations are insufficient to ensure that Plaintiffs' and Class Members' PII/PHI will be protected from additional exposure in a subsequent data breach.

17

18

19

37.     Further, the Notice of Data Breach shows that Defendant TriZetto cannot—or will not—determine the full scope of the Data Breach, as Defendant TriZetto has been unable to determine precisely what information was stolen and when.

20

21

22

23

24

25

26

27

28

---

[20] *Data Breach Notice*, SOUTH CENTRAL PUBLIC HEALTH DISTRICT, https://www.classaction.org/media/trizetto-data-breach-attorney-letter-2025.pdf (last visited Dec. 16, 2025).
[21] *Id.*
[22] *TriZetto Provider Solutions Notifies Healthcare Provider Clients About Data Breach*, THE HIPAA JOURNAL, https://www.hipaajournal.com/trizetto-provider-solutions-data-breach/ (last visited Dec. 16, 2025).

38.    Defendant TriZetto has done little to remedy its Data Breach. True, Defendant TriZetto has offered some victims credit monitoring and identity related services. [23] But upon information and belief, such services are wholly insufficient to compensate Plaintiffs and Class Members for the injuries that Defendants inflicted upon them.

39.    Because of Defendants' Data Breach, the sensitive PII/PHI of Plaintiffs and Class Members was placed into the hands of cybercriminals—inflicting numerous injuries and significant damages upon Plaintiffs and Class Members.

***Plaintiff Joseph Corbray's Experiences and Injuries***

40.    Plaintiff Joseph Corbray is a current patient of Defendant One Community Health and has been a patient for approximately nine years.

41.    Thus, Defendants TriZetto and One Community Health obtained and maintained Plaintiff's PII/PHI.

42.    As a result, Plaintiff was injured by Defendants' Data Breach.

43.    Plaintiff is very careful about the privacy and security of his PII/PHI. He does not knowingly transmit his PII/PHI over the internet in an unsafe manner. He is careful to store any documents containing his PII/PHI in a secure location.

44.    As a condition of Plaintiff's involvement with Defendant One Community Health, Defendants obtained his PII/PHI.

45.    Plaintiff provided his PII/PHI to Defendants and trusted the companies would use reasonable measures to protect it according to Defendants' internal policies, as well as state and federal law. Defendants obtained and continued to maintain Plaintiff's PII/PHI and have a continuing legal duty and obligation to protect that PII/PHI from unauthorized access and disclosure.

---

[23] *Notice of Data Security Incident*, ONE COMMUNITY HEALTH, https://onecommunityhealth.com/notice-of-data-security-incident/#:~:text=One%20Community%20Health%20uses%20TriZetto,of%20its%20healthcare%20provider%20customers (last visited Jan. 5, 2026).

46.    Thus, on information and belief, Plaintiff's PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

47.    Through their Data Breach, Defendants compromised Plaintiff's PII/PHI.

48.    Plaintiff has spent—and will continue to spend—significant time and effort monitoring his accounts to protect himself from identity theft.

49.    And in the aftermath of the Data Breach, Plaintiff suffered from a spike in spam and scam emails and phone calls.

50.    Plaintiff fears for his personal health and financial security and worries about what information was exposed in the Data Breach.

51.    Because of Defendants' Data Breach, Plaintiff has suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond allegations of mere worry or inconvenience. Rather, Plaintiff's injuries are precisely the type of injuries that the law contemplates and addresses.

52.    Plaintiff suffered actual injury from the exposure and theft of his PII/PHI—which violates his rights to privacy.

53.    Plaintiff suffered actual injury in the form of damages to and diminution in the value of his PII/PHI. After all, PII/PHI is a form of intangible property—property that Defendants were required to adequately protect.

54.    Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendants' Data Breach placed Plaintiff's PII/PHI right in the hands of criminals.

55.    Because of the Data Breach, Plaintiff anticipates spending considerable amounts of time and money to try and mitigate their injuries.

56.    Today, Plaintiff has a continuing interest in ensuring that his PII/PHI—which, upon information and belief, remains backed up in Defendants' possession—is protected and safeguarded from additional breaches.

***Plaintiff Stephanie Jones's Experiences and Injuries***

57.     Plaintiff Stephanie Jones is a current patient of Defendant One Community Health and has been a patient for approximately twelve years.

58.     Thus, Defendants TriZetto and One Community Health obtained and maintained Plaintiff's PII/PHI.

59.     As a result, Plaintiff was injured by Defendants' Data Breach.

60.     Plaintiff is very careful about the privacy and security of her PII/PHI. She does not knowingly transmit her PII/PHI over the internet in an unsafe manner. She is careful to store any documents containing her PII/PHI in a secure location.

61.     As a condition of Plaintiff's involvement with Defendant One Community Health, Defendants obtained her PII/PHI.

62.     Plaintiff provided her PII/PHI to Defendants and trusted the companies would use reasonable measures to protect it according to Defendants' internal policies, as well as state and federal law. Defendants obtained and continued to maintain Plaintiff's PII/PHI and have a continuing legal duty and obligation to protect that PII/PHI from unauthorized access and disclosure.

63.     Thus, on information and belief, Plaintiff's PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

64.     Through their Data Breach, Defendants compromised Plaintiff's PII/PHI.

65.     Plaintiff has spent—and will continue to spend—significant time and effort monitoring her accounts to protect herself from identity theft.

66.     And in the aftermath of the Data Breach, Plaintiff suffered from a spike in spam and scam texts and phone calls.

67.     Plaintiff fears for her personal health and financial security and worries about what information was exposed in the Data Breach.

68.     Because of Defendants' Data Breach, Plaintiff has suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond

allegations of mere worry or inconvenience. Rather, Plaintiff's injuries are precisely the type of injuries that the law contemplates and addresses.

69.    Plaintiff suffered actual injury from the exposure and theft of her PII/PHI—which violates her rights to privacy.

70.    Plaintiff suffered actual injury in the form of damages to and diminution in the value of her PII/PHI. After all, PII/PHI is a form of intangible property—property that Defendants were required to adequately protect.

71.    Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendants' Data Breach placed Plaintiff's PII/PHI right in the hands of criminals.

72.    Because of the Data Breach, Plaintiff anticipates spending considerable amounts of time and money to try and mitigate her injuries.

73.    Today, Plaintiff has a continuing interest in ensuring that her PII/PHI—which, upon information and belief, remains backed up in Defendants' possession—is protected and safeguarded from additional breaches.

***Consumers Prioritize Data Security***

74.    In 2024, the technology and communications conglomerate Cisco published the results of its multi-year "Consumer Privacy Survey."[24] Therein, Cisco reported the following:

      a.    "For the past six years, Cisco has been tracking consumer trends across the privacy landscape. During this period, privacy has evolved from relative

---

[24] *Privacy Awareness: Consumers Taking Charge to Protect Personal*, Cisco, https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer-privacy-report-2024.pdf (last visited March 19, 2025).

12

obscurity to a customer requirement with more than 75% of consumer respondents saying they won't purchase from an organization they don't trust with their data."[25]

b.    "Privacy has become a critical element and enabler of customer trust, with 94% of organizations saying their customers would not buy from them if they did not protect data properly."[26]

c.    89% of consumers stated that "I care about data privacy."[27]

d.    83% of consumers declared that "I am willing to spend time and money to protect data" and that "I expect to pay more" for privacy.[28]

e.    51% of consumers revealed that "I have switched companies or providers over their data policies or data-sharing practices."[29]

f.    75% of consumers stated that "I will not purchase from organizations I don't trust with my data."[30]

***Plaintiff and the Proposed Class Suffered Common Injuries and Damages***

75.    Because of Defendants' failure to prevent the Data Breach, Plaintiff and Class Members suffered—and will continue to suffer—damages. These damages include, *inter alia*, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

a.    loss of the opportunity to control how their PII/PHI is used;

b.    diminution in value of their PII/PHI;

c.    compromise and continuing publication of their PII/PHI;

---

[25] *Id*. at 3.
[26] *Id*.
[27] *Id*. at 9.
[28] *Id*.
[29] *Id*.
[30] *Id*. at 11.

d.     out-of-pocket costs from trying to prevent, detect, and recovery from identity theft and fraud;

e.     lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, *inter alia*, preventing, detecting, contesting, and recovering from identity theft and fraud;

f.     delay in receipt of tax refund monies;

g.     unauthorized use of their stolen PII/PHI; and

h.     continued risk to their PII/PHI—which remains in Defendants' possession—and is thus at risk for futures breaches so long as Defendants fail to take appropriate measures to protect the PII/PHI.

***Substantially Increased Risk of Identity Theft and Fraud***

76.     Plaintiffs and Class Members are at a heightened risk of identity theft for years to come because of the Data Breach.

77.     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 17 C.F.R. § 248.201 (2013).

78.     The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." *Id*.

79.     The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal individuals' personal data to monetize the information. Criminals monetize the data by selling the stolen information on the internet black market (aka the Dark Web) to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

80.     The "Dark Web" is an unindexed layer of the internet that requires special software or authentication to access.[31] Criminals in particular favor the Dark Web as it offers a degree of anonymity to visitors and website publishers. Unlike the traditional or "surface" web, Dark Web users need to know the web address of the website they wish to visit in advance. For example, on the surface web, the CIA's web address is cia.gov, but on the Dark Web the CIA's web address is ciadotgov4sjwlzihbbgxnqg3xiyrg7so2r2o3lt5wz5ypk4sxyjstad.onion.[32] This prevents Dark Web marketplaces from being easily monitored by authorities or accessed by those not in the know.

81.     The unencrypted PII/PHI of Plaintiff and Class Members has or will end up for sale on the Dark Web because that is the modus operandi of hackers. In addition, unencrypted and detailed PII/PHI may fall into the hands of companies that will use it for targeted marketing without the approval of Plaintiff and Class Members. Unauthorized individuals can easily access the Plaintiffs' and Class Members' PII/PHI.

82.     Theft of Social Security numbers also creates a particularly alarming situation for victims because those numbers cannot easily be replaced. To obtain a new number, a breach victim must demonstrate ongoing harm from misuse of their SSN, and a new SSN will not be provided until after the victim has suffered the harm.

83.     In particular, the theft of Social Security numbers—in combination with other PII/PHI (e.g., name, address, date of birth)—provides cybercriminals with a "skeleton key" to commit rampant fraud and identity theft.

84.     For example, cybersecurity expert Jim Stickley explained to Time Magazine that "[i]f I have your name and your Social Security number, and you haven't gotten a credit freeze yet, you're easy pickings . . . With that, you can do whatever you want . . . You can become that

---

[31] *What Is the Dark Web?,* EXPERIAN, https://www.experian.com/blogs/ask-experian/what-isthe-dark-web/ (last visited July 9, 2025).
[32] *Id.*

15

person."[33] For context, Jim Stickley is a "penetration tester" who is employed by businesses "to infiltrate their systems in order to find flaws they can fix before the bad guys exploit them."[34]

85.     There may also be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. Fraud and identity theft resulting from the Data Breach may go undetected until debt collection calls commence months, or even years later. An individual may not know that their Social Security number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

86.     For example, on average it takes approximately three months for consumers to discover their identity has been stolen and used, and it takes some individuals up to three years to learn that information.[35]

87.     It is within this context that Plaintiff and all other Class Members must now live with the knowledge that their PII/PHI is forever in cyberspace and was taken by people willing to use the information for any number of improper purposes and scams, including making the information available for sale on the black market.

88.     Because a person's identity is akin to a puzzle with multiple data points, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity, or to track the victim to attempt other hacking crimes against the individual to obtain more data to perfect a crime.

89.     For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a

[33] Patrick L. Austin, *'It Is Absurd.' Data Breaches Show it's Time to Rethink How We Use Social Security Numbers, Experts Say*, TIME MAGAZINE (Aug. 5, 2019) https://time.com/5643643/capital-one-equifax-data-breach-social-security/.
[34] *Id.*
[35] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 J. SYSTEMICS, CYBERNETICS & INFORMATICS 9 (2019) http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

16

victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate and trick individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails. Data breaches are often the starting point for these additional targeted attacks on the victims.

90.    Identity thieves can also use an individual's personal data and PII/PHI to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's information, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant issued in the victim's name.[36]

91.    One example of criminals piecing together bits and pieces of compromised PII/PHI to create comprehensive dossiers on individuals is called "Fullz" packages.[37]  These dossiers are both shockingly accurate and comprehensive. With "Fullz" packages, cybercriminals can cross-reference two sources of PII/PHI to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy to assemble complete

---

[36] *Identity Theft and Your Social Security Number,* SOCIAL SECURITY ADMINISTRATION, 1 (2018), https://www.ssa.gov/pubs/EN-05-10064.pdf. (last visited July 9, 2025).

[37] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See, e.g.,* Brian Krebs, *Medical Records for Sale in Underground Stolen from Texas Life Insurance Firm,* KREBS ON SECURITY (Sep. 18, 2014), https://krebsonsecurity.com/2014/09/    medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm.

dossiers on individuals. For example, they can combine the stolen PII/PHI, and with unregulated data found elsewhere on the internet (like phone numbers, emails, addresses, etc.).

92.    The development of "Fullz" packages means that the PII/PHI exposed in the Data Breach can easily be linked to data of Plaintiff and the Class that is available on the internet. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII/PHI stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and Class Members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other Class Members' stolen PII/PHI is being misused, and that such misuse is traceable to the Data Breach.

93.    According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year, resulting in more than $3.5 billion in losses to individuals and business victims.[38]

94.    Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good." Yet, Defendant failed to rapidly report to Plaintiff and the Class that their PII/PHI was stolen. Defendants' failure to promptly and properly notify Plaintiff and Class Members of the Data Breach exacerbated Plaintiff's and Class Members' injuries by depriving them of the earliest ability to take appropriate measures to protect their PII/PHI and take other necessary steps to mitigate the harm caused by the Data Breach.

95.    Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

---

[38] *2019 Internet Crime Report* (Feb. 11, 2020) FED. BUREAU INTELLIGENCE, https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120 (last visited July 9, 2025).

96.    In addition to out-of-pocket expenses that can exceed thousands of dollars, and the emotional toll identity theft can take, some victims must spend considerable time repairing the damage caused by the theft of their PII/PHI. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

97.    Further complicating the issues faced by victims of identity theft, data thieves may wait years before attempting to use the stolen PII/PHI. To protect themselves, Plaintiffs and Class Members will need to remain vigilant for years or even decades to come.

**Defendants Knew—Or Should Have Known—of the Risk of a Data Breach**

98.    Defendants' data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

99.    In 2024, a record 3,158 data breaches occurred—exposing approximately 1,350,835,988 sensitive records (i.e., 211% increase year over year).[39]

100.    Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service issue warnings to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[40]

101.    In fact, according to the cybersecurity firm Mimecast, 90% of healthcare organizations have experienced cyberattacks.[41]

---

[39] *2024 Data Breach Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2025), https://www.idtheftcenter.org/wp-content/uploads/2025/02/ITRC_2024DataBreachReport.pdf.

[40] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

[41] Maria Henriquez, *Iowa City Hospital Suffers Phishing Attack*, SECURITY MAGAZINE (Nov. 23, 2020), https://www.securitymagazine.com/articles/93988-iowa-city-hospital-suffers-phishing-attack (last visited Nov. 23, 2025).

102.    Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendants' industry, including Defendants.

***Defendants Could Have Prevented the Data Breach***

103.    Data breaches are preventable.[42] Indeed, the American Bar Association published a treatise titled the *Data Breach and Encryption Handbook* wherein the author explained that:

a.    "In almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[43]

b.    "Organizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised[.]"[44]

c.    "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures . . .. Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a data breach never occurs." [45]

***Defendants Failed to Follow FTC Guidelines***

104.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  Thus, the FTC issued numerous guidelines identifying best data security practices that businesses—like Defendants—should use to protect against unlawful data exposure.

---

[42] Lucy L. Thomson, *Despite the Alarming Trends, Data Breaches Are Preventable*, DATA BREACH AND ENCRYPTION HANDBOOK (2012).
[43] *Id.* at 17.
[44] *Id.* at 28.
[45] *Id.*

105.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*. There, the FTC set guidelines for what data security principles and practices businesses must use.[46]  The FTC declared that, *inter alia*, businesses must:

        a.      protect the personal customer information that they keep;

        b.      properly dispose of personal information that is no longer needed;

        c.      encrypt information stored on computer networks;

        d.      understand their network's vulnerabilities; and

        e.      implement policies to correct security problems.

106.    The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

107.    Furthermore, the FTC explains that companies must:

        a.      not maintain information longer than is needed to authorize a transaction;

        b.      limit access to sensitive data;

        c.      require complex passwords to be used on networks;

        d.      use industry-tested methods for security;

        e.      monitor for suspicious activity on the network; and

        f.      verify that third-party service providers use reasonable security measures.

108.    The FTC brings enforcement actions against businesses for failing to protect customer data adequately and reasonably. Thus, the FTC treats the failure—to use reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

---

[46] *Protecting Personal Information: A Guide for Business,* FED TRADE COMMISSION (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

109.    In short, Defendants' failure to use reasonable and appropriate measures to protect against unauthorized access to its current and former consumer's and employee's data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendants Failed to Follow Industry Standards***

110.    Several best practices have been identified that—at a *minimum*—should be implemented by businesses like Defendants. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

111.    Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

112.    Upon information and belief, Defendants failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

113.    These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendants opened the door to the criminals—thereby causing the Data Breach.

***Defendants Violated HIPAA***

114.    HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly

known as the Administrative Simplification Rules, establish national standards for electronic

transactions and code sets to maintain the privacy and security of protected health information.[47]

115.    HIPAA provides specific privacy rules that require comprehensive administrative,

physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII/PHI

and PHI is properly maintained.[48]

116.    The Data Breach itself resulted from a combination of inadequacies showing

Defendants failed to comply with safeguards mandated by HIPAA. Defendants' security failures

include, but are not limited to:

    a.    failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

    b.    failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

    c.    failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

    d.    failing to ensure compliance with HIPAA security standards by Defendants' workforce in violation of 45 C.F.R. § 164.306(a)(4);

    e.    failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to

---

[47] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, *inter alia*: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

[48] 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

    f.    failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

    g.    failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

    h.    failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

    i.    failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

117.    Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendants failed to comply with safeguards mandated by HIPAA regulations.

**CLASS ACTION ALLEGATIONS**

118.    Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> All individuals residing in the United States whose PII/PHI was compromised in the Data Breach discovered by TriZetto in December 2025, including all those individuals who received notice of the breach.

119.    Excluded from the Class are Defendants, their agents, affiliates, parents, subsidiaries, any entity in which Defendants have a controlling interest, any Defendants' officer

or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

120.    Plaintiffs reserve the right to amend the Class definition.

121.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

122.    <u>Ascertainability</u>. All members of the proposed Class are readily ascertainable from information in Defendants' custody and control. After all, Defendant TriZetto already identified some individuals and sent them data breach notices.

123.    <u>Numerosity</u>. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes thousands of members.

124.    <u>Typicality</u>. Plaintiff's claims are typical of Class Members' claims as each arises from the same Data Breach, the same alleged violations by Defendants, and the same unreasonable manner of notifying individuals about the Data Breach.

125.    <u>Adequacy</u>. Plaintiffs will fairly and adequately protect the proposed Class's common interests. Their interests do not conflict with Class Members' interests. And Plaintiffs have retained counsel—including lead counsel—that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

126.    <u>Commonality and Predominance</u>. Plaintiffs' and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer the following questions:

   a.    Whether Defendants had a duty to use reasonable care in safeguarding Plaintiffs' and the Class's PII/PHI;

   b.    Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.      Whether Defendants were negligent in maintaining, protecting, and securing PII/PHI;

d.      Whether Defendants breached contract promises to safeguard Plaintiffs' and the Class's PII/PHI;

e.      Whether Defendants took reasonable measures to determine the extent of the Data Breach after discovering it;

f.      Whether Defendants' Breach Notice was reasonable;

g.      Whether the Data Breach caused Plaintiffs and the Class injuries;

h.      What the proper damages measure is; and

i.      Whether Plaintiffs and the Class are entitled to damages, treble damages, and/or injunctive relief.

127.    <u>Superiority.</u> A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendants would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

## FIRST CAUSE OF ACTION
### Negligence
### (On Behalf of Plaintiffs and the Class)

128.    Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

26

129.     Plaintiffs and the Class entrusted their PII/PHI to Defendants on the premise and with the understanding that Defendants would safeguard their PII/PHI, use their PII/PHI for business purposes only, and/or not disclose their PII/PHI to unauthorized third parties.

130.     Defendants owed a duty of care to Plaintiffs and Class Members because it was foreseeable that Defendants' failure—to use adequate data security in accordance with industry standards for data security—would compromise their PII/PHI in a data breach. And here, that foreseeable danger came to pass.

131.     Defendants have full knowledge of the sensitivity of the PII/PHI and the types of harm that Plaintiffs and the Class could and would suffer if their PII/PHI was wrongfully disclosed.

132.     Defendants owed these duties to Plaintiffs and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendants knew or should have known would suffer injury-in-fact from Defendants' inadequate security practices. After all, Defendants actively sought and obtained Plaintiffs and Class Members' PII/PHI.

133.     Defendants owed—to Plaintiffs and Class Members—at least the following duties to:

> a.     exercise reasonable care in handling and using the PII/PHI in its care and custody;
>
> b.     implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;
>
> c.     promptly detect attempts at unauthorized access;
>
> d.     notify Plaintiffs and Class Members within a reasonable timeframe of any breach to the security of their PII/PHI.

134.     Thus, Defendants owed a duty to timely and accurately disclose to Plaintiffs and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiffs and Class Members to take appropriate measures to protect their PII/PHI, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

135.    Defendants also had a duty to exercise appropriate clearinghouse practices to remove PII/PHI it was no longer required to retain under applicable regulations.

136.    Defendants knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII/PHI of Plaintiffs and the Class involved an unreasonable risk of harm to Plaintiffs and the Class, even if the harm occurred through the criminal acts of a third party.

137.    Defendants' duty to use reasonable security measures arose because of the special relationship that existed between Defendants and Plaintiffs and the Class. That special relationship arose because Plaintiffs and the Class entrusted Defendants with their confidential PII/PHI, a necessary part of obtaining services from Defendants.

138.    The risk that unauthorized persons would attempt to gain access to the PII/PHI and misuse it was foreseeable. Given that Defendants hold vast amounts of PII/PHI, it was inevitable that unauthorized individuals would attempt to access Defendants' databases containing the PII/PHI —whether by malware or otherwise.

139.    PII/PHI is highly valuable, and Defendants knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII/PHI of Plaintiffs and Class Members' and the importance of exercising reasonable care in handling it.

140.    Defendants improperly and inadequately safeguarded the PII/PHI of Plaintiffs and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

141.    Defendants breached these duties as evidenced by the Data Breach.

142.    Defendants acted with wanton and reckless disregard for the security and confidentiality of Plaintiffs' and Class Members' PII/PHI by:

    a.    disclosing and providing access to this information to third parties and

    b.    failing to properly supervise both the way the PII/PHI was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

143.    Defendants breached their duties by failing to exercise reasonable care in supervising their agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII/PHI of Plaintiffs and Class Members which actually and proximately caused the Data Breach and Plaintiffs' and Class Members' injury.

144.    Defendants further breached their duties by failing to provide reasonably timely notice of the Data Breach to Plaintiffs and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiffs' and Class Members' injuries-in-fact.

145.    Defendants have admitted that the PII/PHI of Plaintiffs and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

146.    As a direct and traceable result of Defendants' negligence and/or negligent supervision, Plaintiffs and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

147.    And, on information and belief, Plaintiffs' PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

148.    Defendants' breach of their common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiffs and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII/PHI by criminals, improper disclosure of their PII/PHI, lost benefit of their bargain, lost value of their PII/PHI, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendants' negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**SECOND CAUSE OF ACTION**
**Negligence *per se***
**(On Behalf of Plaintiffs and the Class)**

149.    Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

150.    Under the FTC Act, 15 U.S.C. § 45, Defendants had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' PII/PHI.

151.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect the PII/PHI entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendants' duty to protect Plaintiffs and the Class Members' sensitive PII/PHI.

152.    Defendants breached their respective duties to Plaintiffs and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII/PHI.

153.    Defendants violated their duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII/PHI and not complying with applicable industry standards as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of PII/PHI Defendants had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

154.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and members of the Class.

155.    But for Defendants' wrongful and negligent breach of their duties owed, Plaintiffs and Class Members would not have been injured.

156.     The injury and harm suffered by Plaintiffs and Class Members was the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that Defendants were failing to meet their duties and that their breach would cause Plaintiffs and members of the Class to suffer the foreseeable harm associated with the exposure of their PII/PHI.

157.     Similarly, under HIPAA, Defendants had a duty to follow HIPAA standards for privacy and security practices—as to protect Plaintiffs' and Class Members' PHI.

158.     Defendants violated their duty under HIPAA by failing to use reasonable measures to protect its PHI and by not complying with applicable regulations detailed *supra*. Here too, Defendants' conduct was particularly unreasonable given the nature and amount of PHI that Defendants collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

159.     Defendants' various violations and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

160.     As a direct and proximate result of Defendants' negligence *per se*, Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**THIRD CAUSE OF ACTION**
**Breach of Implied Contract**
**(On Behalf of Plaintiffs and the Class)**

161.     Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

162.     Plaintiffs and Class Members were required to provide their PII/PHI to Defendants as a condition of receiving medical services provided by Defendants. Plaintiffs and Class Members provided their PII/PHI to Defendants or their third-party agents in exchange for Defendant One Community Health's medical services.

163.     Plaintiffs and Class Members reasonably understood that a portion of the funds they paid would be used to pay for adequate cybersecurity measures.

164.    Plaintiffs and Class Members reasonably understood that Defendants would use adequate cybersecurity measures to protect the PII/PHI that they were required to provide based on Defendants' duties under state and federal law and its internal policies.

165.    Plaintiffs and the Class Members accepted Defendants' offers by disclosing their PII/PHI to Defendants or their third-party agents in exchange for medical services.

166.    In turn, and through internal policies, Defendants agreed to protect and not disclose the PII/PHI to unauthorized persons.

167.    In their Privacy Policies, Defendants represented that they had a legal duty to protect Plaintiffs' and Class Member's PII/PHI.

168.    Implicit in the parties' agreement was that Defendants would provide Plaintiffs and Class Members with prompt and adequate notice of all unauthorized access and/or theft of their PII/PHI.

169.    After all, Plaintiffs and Class Members would not have entrusted their PII/PHI to Defendants in the absence of such an agreement with Defendants.

170.    Plaintiffs and the Class fully performed their obligations under the implied contracts with Defendants.

171.    The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

172.    Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

173.    Defendants materially breached the contracts they entered with Plaintiffs and Class Members by:

32

a.      failing to safeguard their information;

b.      failing to notify them promptly of the intrusion into its computer systems that compromised such information.

c.      failing to comply with industry standards;

d.      failing to comply with the legal obligations necessarily incorporated into the agreements; and

e.      failing to ensure the confidentiality and integrity of the electronic PII/PHI that Defendants created, received, maintained, and transmitted.

174.    In these and other ways, Defendants violated their duty of good faith and fair dealing.

175.    Defendants' material breaches were the direct and proximate cause of Plaintiffs' and Class Members' injuries (as detailed *supra*).

176.    And, on information and belief, Plaintiffs' PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

177.    Plaintiffs and Class Members performed as required under the relevant agreements, or such performance was waived by Defendants' conduct.

**FOURTH CAUSE OF ACTION**
**Invasion of Privacy**
**(On Behalf of Plaintiffs and the Class)**

178.    Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

179.    Plaintiffs and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII/PHI and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

180.    Defendants owed a duty to their current and former patients, including Plaintiffs and the Class, to keep this information confidential.

181.    The unauthorized acquisition (i.e., theft) by a third party of Plaintiffs' and Class Members' PII/PHI is highly offensive to a reasonable person.

182.     The intrusion was into a place or thing which was private and entitled to be private. Plaintiffs and the Class disclosed their sensitive and confidential information to Defendants, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiffs and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

183.     The Data Breach constitutes an intentional interference with Plaintiffs' and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

184.     Defendants acted with a knowing state of mind when they permitted the Data Breach because it knew its information security practices were inadequate.

185.     Defendants acted with a knowing state of mind when they failed to notify Plaintiffs and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

186.     Acting with knowledge, Defendants had notice and knew that their inadequate cybersecurity practices would cause injury to Plaintiffs and the Class.

187.     As a proximate result of Defendants' acts and omissions, the private and sensitive PII/PHI of Plaintiffs and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiffs and the Class to suffer damages (as detailed *supra*).

188.     And, on information and belief, Plaintiffs' PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

189.     Unless and until enjoined and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and the Class since their PII/PHI are still maintained by Defendants with their inadequate cybersecurity system and policies.

190.     Plaintiffs and the Class have no adequate remedy at law for the injuries relating to Defendants' continued possession of their sensitive and confidential records. A judgment for

monetary damages will not end Defendants' inability to safeguard the PII/PHI of Plaintiffs and the Class.

191.    In addition to injunctive relief, Plaintiffs, on behalf of themselves and the other Class Members, also seek compensatory damages for Defendants' invasion of privacy, which includes the value of the privacy interest invaded by Defendants, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Class)**

192.    Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

193.    This claim is pleaded in the alternative to the breach of implied contract claim.

194.    Plaintiffs and Class Members conferred a benefit upon Defendants. After all, Defendants benefitted from (1) using their PII/PHI to provide medical services, and (2) accepting payment.

195.    Defendants appreciated or had knowledge of the benefits they received from Plaintiffs and Class Members.

196.    Plaintiffs and Class Members reasonably understood that Defendants would use adequate cybersecurity measures to protect the PII/PHI that they were required to provide based on Defendants' duties under state and federal law and its internal policies.

197.    Defendants enriched themselves by saving the costs they reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' PII/PHI.

198.    Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendants instead calculated to avoid its data security obligations at the expense of Plaintiffs and Class Members by utilizing cheaper, ineffective security measures. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' failure to provide the requisite security.

199.    Under principles of equity and good conscience, Defendants should not be permitted to retain the full value of Plaintiffs' and Class Members' (1) PII/PHI and (2) payment because Defendants failed to adequately protect their PII/PHI.

200.    Plaintiffs and Class Members have no adequate remedy at law.

201.    Defendants should be compelled to disgorge into a common fund—for the benefit of Plaintiffs and Class Members—all unlawful or inequitable proceeds that it received because of its misconduct.

## SIXTH CAUSE OF ACTION
### Breach of Fiduciary Duty
### (On Behalf of Plaintiffs and the Class)

202.    Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

203.    Given the relationship between Defendants and Plaintiffs and Class Members, where Defendants became guardian of Plaintiffs' and Class Members' PII/PHI, Defendants became a fiduciary by its undertaking and guardianship of the PII/PHI, to act primarily for Plaintiffs and Class Members, (1) for the safeguarding of Plaintiffs' and Class Members' PII/PHI; (2) to timely notify Plaintiffs and Class Members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendants did and does store.

204.    Defendants have a fiduciary duty to act for the benefit of Plaintiffs and Class Members upon matters within the scope of Defendants' relationship with them—especially to secure their PII/PHI.

205.    Because of the highly sensitive nature of the PII/PHI, Plaintiffs and Class Members would not have entrusted Defendants, or anyone in Defendants' position, to retain their PII/PHI had they known the reality of Defendants' inadequate data security practices.

206.    Defendants breached their fiduciary duties to Plaintiffs and Class Members by failing to sufficiently encrypt or otherwise protect Plaintiffs' and Class Members' PII/PHI.

207.    Defendants also breached their fiduciary duties to Plaintiffs and Class Members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

208.    As a direct and proximate result of Defendants' breach of its fiduciary duties, Plaintiffs and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**SEVENTH CAUSE OF ACTION**
**Violation of California's Unfair Competition Law (UCL)**
**Cal. Bus. & Prof. Code § 17200, *et seq*.**
**(On Behalf of Plaintiffs and the Class)**

209.    Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

210.    Defendants engaged in unlawful and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*. which prohibits unlawful, unfair, or fraudulent business acts or practices ("UCL").

211.    Defendants' conduct is unlawful because it violates the California Consumer Privacy Act of 2018, Civ. Code § 1798.100, *et seq*. (the "CCPA"), the California Customer Records Act, Cal. Civ. Code § 1798.80, *et seq*. (the "CRA"), and other state data security laws.

212.    Defendants stored the PII/PHI of Plaintiffs and the Class in its computer systems and knew or should have known it did not employ reasonable, industry standard, and appropriate security measures that complied with applicable regulations and that would have kept Plaintiffs' and the Class's PII/PHI secure to prevent the loss or misuse of that PII/PHI.

213.    Defendants failed to disclose to Plaintiffs and the Class that their PII/PHI was not secure. However, Plaintiffs and the Class were entitled to assume, and did assume that Defendants had secured their PII/PHI. At no time were Plaintiffs and the Class on notice that their PII/PHI was not secure, which Defendants had a duty to disclose.

214.    Defendants also violated California Civil Code § 1798.150 by failing to implement and maintain reasonable security procedures and practices, resulting in unauthorized access and

exfiltration, theft, or disclosure of Plaintiffs' and the Class's nonencrypted and nonredacted PII/PHI.

215.    Had Defendants complied with these requirements, Plaintiffs and the Class would not have suffered the damages related to the data breach.

216.    Defendants' conduct was unlawful, in that it violated the CCPA.

217.    Defendants' acts, omissions, and misrepresentations as alleged herein were unlawful and in violation of, inter alia, Section 5(a) of the Federal Trade Commission Act.

218.    Defendants' conduct was also unfair, in that it violated a clear legislative policy in favor of protecting consumers from data breaches.

219.    Defendants' conduct is an unfair business practice under the UCL because it was immoral, unethical, oppressive, and unscrupulous and caused substantial harm. This conduct includes employing unreasonable and inadequate data security despite its business model of actively collecting PII/PHI.

220.    Defendants also engaged in unfair business practices under the "tethering test." Its actions and omissions, as described above, violated fundamental public policies expressed by the California Legislature. *See, e.g.*, Cal. Civ. Code § 1798.1 ("The Legislature declares that . . . all individuals have a right of privacy in information pertaining to them . . . The increasing use of computers . . . has greatly magnified the potential risk to individual privacy that can occur from the maintenance of personal information."); Cal. Civ. Code § 1798.81.5(a) ("It is the intent of the Legislature to ensure that personal information about California residents is protected."); Cal. Bus. & Prof. Code § 22578 ("It is the intent of the Legislature that this chapter [including the Online Privacy Protection Act] is a matter of statewide concern."). Defendants' acts and omissions thus amount to a violation of the law.

221.    Instead, Defendants made the PII/PHI of Plaintiffs and the Class accessible to scammers, identity thieves, and other malicious actors, subjecting Plaintiffs and the Class to an impending risk of identity theft. Additionally, Defendants' conduct was unfair under the UCL because it violated the policies underlying the laws set out in the prior paragraph.

222.    As a result of those unlawful and unfair business practices, Plaintiffs and the Class suffered an injury-in-fact and lost money or property.

223.    For one, on information and belief, Plaintiffs' and the Class's stolen PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

224.    The injuries to Plaintiffs and the Class greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.

225.    There were reasonably available alternatives to further Defendants' legitimate business interests, other than the misconduct alleged in this complaint.

226.    Therefore, Plaintiffs and the Class are entitled to equitable relief, including restitution of all monies paid to or received by Defendants; disgorgement of all profits accruing to Defendants because of its unfair and improper business practices; a permanent injunction enjoining Defendants' unlawful and unfair business activities; and any other equitable relief the Court deems proper.

## EIGHTH CAUSE OF ACTION
### Violations of the California Consumer Privacy Act ("CCPA")
### Cal. Civ. Code § 1798.150
### (On Behalf of Plaintiffs and the Class)

227.    Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

228.    Defendants violated California Civil Code § 1798.150 of the CCPA by failing to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the nonencrypted PII/PHI of Plaintiffs and the Class. As a direct and proximate result, Plaintiffs' and the Class's non-encrypted and non-redacted PII/PHI was subject to unauthorized access and exfiltration, theft, or disclosure.

229.    Defendants are a "business" under the meaning of Civil Code § 1798.140 because Defendants are a "corporation, association, or other legal entity that is organized or operated for the profit or financial benefit of its shareholders or other owners" that "collects consumers' personal information" and is active "in the State of California" and "had annual gross revenues in

excess of twenty-five million dollars ($25,000,000) in the preceding calendar year." Civil Code § 1798.140(d).

230.    Plaintiffs and Class Members seek injunctive or other equitable relief to ensure Defendants hereinafter adequately safeguard PII/PHI by implementing reasonable security procedures and practices. Such relief is particularly important because Defendants continue to hold PII/PHI, including Plaintiffs' and Class members' PII/PHI. Plaintiffs and Class members have an interest in ensuring that their PII/PHI is reasonably protected, and Defendants have demonstrated a pattern of failing to adequately safeguard this information.

231.    Pursuant to California Civil Code § 1798.150(b), Plaintiffs mailed a CCPA notice letter to Defendants' registered service agents, detailing the specific provisions of the CCPA that Defendants has violated and continues to violate. If Defendants cannot cure within 30 days—and Plaintiffs believes such cure is not possible under these facts and circumstances—then Plaintiffs intend to promptly amend this Complaint to seek statutory damages as permitted by the CCPA.

232.    As described herein, an actual controversy has arisen and now exists as to whether Defendants implemented and maintained reasonable security procedures and practices appropriate to the nature of the information to protect the personal information under the CCPA.

233.    A judicial determination on this issue is necessary and appropriate at this time under the circumstances to prevent further data breaches by Defendants.

**NINTH CAUSE OF ACTION**
**Violation of the California Customer Records Act**
**Cal. Civ. Code § 1798.80, *et seq*.**
**(On Behalf of Plaintiffs and the Class)**

234.    Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

235.    Under the California Customer Records Act, any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" must "disclose any breach of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal.

Civ. Code § 1798.82. The disclosure must "be made in the most expedient time possible and without unreasonable delay" but disclosure must occur "immediately following discovery [of the breach], if the personal information was, *or* is reasonably believed to have been, acquired by an unauthorized person." *Id* (emphasis added).

236. The Data Breach constitutes a "breach of the security system" of Defendants.

237. An unauthorized person acquired personal, unencrypted information of Plaintiffs and the Class.

238. Defendants knew that an unauthorized person had acquired the personal, unencrypted information of Plaintiffs and the Class but waited months to notify them. Given the severity of the Data Breach, ten months was an unreasonable delay.

239. Defendants' unreasonable delay prevented Plaintiffs and the Class from taking appropriate measures to protect themselves against harm.

240. Because Plaintiffs and the Class were unable to protect themselves, they suffered incrementally increased damages that they would not have suffered with timelier notice.

241. Plaintiffs and the Class are entitled to equitable relief and damages in an amount to be determined at trial.

### TENTH CAUSE OF ACTION
**Declaratory Judgment**
**(On Behalf of Plaintiffs and the Class)**

242. Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

243. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

244. In the fallout of the Data Breach, an actual controversy has arisen about Defendants' various duties to use reasonable data security. On information and belief, Plaintiffs

41

allege that Defendants' actions were—and *still* are—inadequate and unreasonable. And Plaintiffs and Class Members continue to suffer injury from the ongoing threat of fraud and identity theft.

245. Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

      a.    Defendants owed—and continue to owe—a legal duty to use reasonable data security to secure the data entrusted to it;

      b.    Defendants have a duty to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

      c.    Defendants breached, and continue to breach, their duties by failing to use reasonable measures to the data entrusted to them; and

      d.    Defendants' breaches of their duties caused—and continues to cause— injuries to Plaintiffs and Class Members.

246. The Court should also issue corresponding injunctive relief requiring Defendants to use adequate security consistent with industry standards to protect the data entrusted to it.

247. If an injunction is not issued, Plaintiffs and the Class will suffer irreparable injury and lack an adequate legal remedy if Defendants experience a second data breach.

248. And if a second breach occurs, Plaintiffs and the Class will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages— while warranted for out-of-pocket damages and other legally quantifiable and provable damages— cannot cover the full extent of Plaintiffs and Class Members' injuries.

249. If an injunction is not issued, the resulting hardship for Plaintiffs and Class Members far exceeds the minimal hardship that Defendants could experience if an injunction is issued.

250. An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiffs, Class Members, and the public at large.

**PRAYER FOR RELIEF**

Plaintiffs and Class Members respectfully request judgment against Defendants and that the Court enter an order:

A.     Certifying this case as a class action on behalf of Plaintiffs and the proposed Class, appointing Plaintiffs as class representatives, and appointing their counsel to represent the Class;

B.     Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiffs and the Class;

C.     Awarding injunctive relief as necessary to protect the interests of Plaintiffs and the Class;

D.     Awarding Plaintiffs and the Class damages including applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

E.     Awarding restitution and damages to Plaintiffs and the Class in an amount to be determined at trial;

F.     Awarding attorneys' fees and costs, as allowed by law;

G.     Awarding prejudgment and post-judgment interest, as provided by law;

H.     Granting Plaintiffs and the Class leave to amend this complaint to conform to the evidence produced at trial; and

I.     Granting other relief that this Court finds appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial for all claims so triable.


Dated: January 5, 2026               By: */s/ Carly M. Roman*
                                          Carly M. Roman
                                          **STRAUSS BORRELLI PLLC**
                                          980 N. Michigan Avenue, Suite 1610
                                          Chicago, IL 60611
                                          Telephone: (872) 263-1100
                                          Facsimile: (872) 263-1109

croman@strausborrelli.com

*Attorneys for Plaintiff and the Proposed Class*